(No. 22369.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT O. SHEPARD *et al.* Plaintiffs in Error.

*Opinion filed October 17, 1934—Rehearing denied Dec. 6, 1934.*

JONES, C. J., and HERRICK, J., dissenting.

ARNOLD B. HARRIS, (GEORGE A. GORDON, of counsel,) for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Albert O. Shepard and Cecil Strong were indicted in the criminal court of Cook county for obtaining money by means of the confidence game. They were tried by the court without a jury, found guilty and sentenced to the penitentiary, and they prosecute this writ of error.

Edward Hemmelgarn, the prosecuting witness, Albert O. Shepard and Cecil Strong, thirty-six, twenty-six and twenty-eight years of age respectively, are all residents of Chicago. Hemmelgarn, while standing at a street corner in that city on the afternoon of February 17, 1933, was approached by Strong, a stranger, who made an inquiry of him. About the same time Shepard, another stranger to Hemmelgarn, appeared and joined in the conversation. Although Shepard and Strong were acquainted with each other, they did not apprise Hemmelgarn of that fact. Upon the suggestion of Shepard the three men went to the apartment of one Marcene Sieber, a married woman, at 28 West Ontario street. Mrs. Sieber and her callers drank beer and the men soon began to play poker. At first matches constituted the stakes but later Strong and Hemmelgarn played for money. In four or six hands Strong won $17 from Hemmelgarn. Thereafter Hemmelgarn, accompanied by Shepard, went to the former's safety box or vault;

Hemmelgarn withdrew $1115 from it and returned to the apartment with Shepard. Hemmelgarn resumed the poker games with Strong and in about twenty minutes lost all his money. Strong left the apartment, taking the money with him. Hemmelgarn departed soon afterwards but returned to the apartment and was denied admittance. He reported his loss to the police department. Shepard received $80 of the sum of money won by Strong, who was arrested at the apartment.

It appears from Hemmelgarn's testimony that when he was approached by Strong the latter declared in a high-pitched voice that he was a farmer from Iowa and wished to see a burlesque show. Hemmelgarn was unable to give the desired information. Shepard appeared and inquired what Strong wanted and upon being told, replied that he knew where there was such a place of entertainment. Strong said that he had money and would pay all the expenses, whereupon Shepard suggested that they go to Mrs. Sieber's apartment. Upon their arrival, Shepard introduced Strong to Mrs. Sieber as a farmer and announced the purpose of his visit. Both Strong and Shepard denied that the former spoke in a high-pitched voice. Strong testified that he asked Hemmelgarn where he might obtain beer, and Shepard corroborated him in that respect. Shepard testified that when he and Strong decided to go to 28 West Ontario street, Hemmelgarn was not asked to accompany them, but that he did so of his own volition.

Additional facts and circumstances appear from the evidence. Hemmelgarn testified that when he had lost $17 to Strong, the latter referred to the witness and Shepard as "a couple of bums and loafers who couldn't raise any money," and that he would wager $100 against two dollars that they could not produce $1000. Hemmelgarn and Shepard repaired to the wash-room and the latter there said, "I would like to call that fellow on that bet." Shepard displayed his bank book but remarked that the banks

had closed for the day and asked Hemmelgarn whether he could obtain any money. Hemmelgarn answered that he had upwards of $1000 in his safety deposit box and that it was not too late to gain access to it. Shepard declared that Mrs. Sieber was his friend and that he would borrow five dollars from her for taxicab fare. He did so and when Shepard and Hemmelgarn returned from the safety deposit vault, Mrs. Sieber announced that the wager proposed by Strong had been withdrawn because they had not put up their money. After drinking more beer Shepard proposed that the poker games be resumed. Hemmelgarn did not wish to play, but upon being urged he engaged in another game with Strong. Mrs. Sieber stood back of Hemmelgarn; told him not to be afraid, and assured him that the result would be satisfactory. Shepard shuffled the cards, kicked Hemmelgarn in the knee and gave them to him to deal, and he dealt them without re-shuffling. Hemmelgarn made no objection to the method in which the cards were handled because he thought Shepard was his friend. Shepard and Strong each testified that Hemmelgarn shuffled the cards when it came his turn to do so. A hat was made the receptacle for Hemmelgarn's money and for a roll of bills which Strong contributed. Strong testified that he placed $70 in the hat but he did not remember whether he told Hemmelgarn that the money so deposited amounted to $1700. He denied that he offered to wager $100 against two dollars that Hemmelgarn could not raise $1000. Strong first testified that he won only $42, but later admitted that he and Shepard obtained all of Hemmelgarn's money. According to Strong's testimony, Hemmelgarn was intoxicated. Shepard admitted that he did not tell Hemmelgarn he was acquainted with Strong.

The remaining testimony concerns the acts of the parties after the conclusion of the poker games. Hemmelgarn testified that Strong arose from the table and appeared to be going to the wash-room, but after fifteen min-

utes elapsed Mrs. Sieber stated that Strong had left the apartment through the front door with the money in his custody. Shepard told Mrs. Sieber that she should not have permitted Strong to leave with Hemmelgarn's money and he added that he would hire a cab in order to make a search for Strong; that the latter lived at the Hotel Sherman and that he, Shepard, would go to Strong's room and recover the money even if he had to use a gun; that the hour at which he was required to resume his work had arrived and that he would meet Hemmelgarn at a certain corner in half an hour. Hemmelgarn advised against the use of violence. Shepard proceeded to his place of employment in a cab. Hemmelgarn went to the corner designated at the appointed time and waited half an hour but Shepard did not appear. Becoming suspicious and seeking to recover his money Hemmelgarn returned to Mrs. Sieber's apartment but was not permitted to enter it. Shepard denied that he gave the Hotel Sherman as Strong's place of abode or that he made an appointment with Hemmelgarn to meet him at a certain street corner to assist in the recovery of the money he lost.

The plaintiffs in error contend that the finding and judgment are not sustained by the evidence. The essence of the crime of obtaining money by means of the confidence game is the trust or confidence reposed in the swindler, obtained by some fraudulent scheme, trick or device, which confidence is afterward betrayed and the money or property obtained from the victim. (*People* v. *Miller,* 344 Ill. 556; *People* v. *Blume,* 345 id. 524; *People* v. *Sullivan,* 349 id. 509.) The conversation between Strong and Hemmelgarn at the street corner; the injection by Shepard of himself into that conversation; the deception of Hemmelgarn by the plaintiffs in error with respect to their acquaintance; their taking him to the apartment with his resulting initial loss of $17; the means employed to induce him to withdraw a substantial sum of money from his safety vault

and to resume the playing of poker; the shuffling of cards by Shepard; the latter's signal to Hemmelgarn, by kicking his knee, apparently without Strong's knowledge; the presence of Mrs. Sieber behind Hemmelgarn where she could see the cards he held and her advice that he continue in the game with the assurance of a satisfactory result; the immediate and secret departure of Strong from the apartment with all of Hemmelgarn's money; Shepard's pretense of assistance to recover the money and his deception concerning his whereabouts; the refusal to admit Hemmelgarn to the apartment upon his return after he had lost his money; the participation of Shepard in the proceeds, and the subsequent arrest of Strong at the apartment, all tend to show that the plaintiffs in error practiced the confidence game to obtain Hemmelgarn's money. The facts and circumstances in evidence disclose a confederacy between the plaintiffs in error, ostensibly strangers, to obtain the confidence of Hemmelgarn; that they succeeded in their purpose and that, taking advantage of the confidence reposed in them, Hemmelgarn was victimized by their swindling operation. The finding and judgment are amply supported by the evidence.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE JONES, dissenting:

It is my opinion that the crime committed by the plaintiffs in error was not the confidence game. The gist of that crime is the obtaining of the confidence of the victim by some false representation or device. (*People* v. *Peers,* 307 Ill. 539; *People* v. *Harrington,* 310 id. 613.) In this case the victim's money was lost through fraudulent tricks and devices employed by various people while he was engaged in playing cards for money. It was not lost through any abuse of confidence. He was given no assurance that he would win. He was engaged in an adventure in which

he was cheated, but which, if played honestly, might have resulted in his winning or losing. There is no evidence that the defendants designedly obtained his confidence or that he reposed any confidence in them. In the absence of such evidence no conviction was warranted.

The indictment was brought under section 98 of the Criminal Code, which defines the confidence game. It should have been brought under section 100, which provides: "Whoever, by the game of 'three card monte,' so called, or any other game, device, sleight of hand, pretensions to fortune telling, trick or other means whatever, by use of cards or other implements or instruments, fraudulently obtains from another person property of any description, shall be punished as in case of larceny of property of like value." A swindling operation which is not connected with the element of confidence fraudulently obtained for the purpose of the swindle does not constitute the crime of confidence game. (*People* v. *Rallo,* 293 Ill. 304; *People* v. *Santow,* id. 430.) The difference between sections 98 and 100 is that under the former it is essential that the victim's confidence shall first be obtained through some trick or device, and it then makes no difference how the money or property is obtained from him so long as it is done in pursuance of the design, but under the latter section the essential element is that the money or property must be obtained by means of a trick or device operating at the time and but for which the victim would not have parted with it. Abuse of confidence wrongfully obtained is not a necessary element. This vital difference appears to have been overlooked in this case.

Mr. JUSTICE HERRICK concurs in this dissent.