(No. 29672.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH PRIOLA *et al.,* Plaintiffs in Error.

*Opinion filed November 20, 1946.*

RICHARD H. DEVINE, of Chicago, for plaintiffs in error.

GEORGE F. BARRETT, Attorney General, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and W. S. MIROSLAWSKI, all of Chicago,) for the People.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Plaintiffs in error, Joseph Priola and Irving Sternberg, hereinafter referred to as defendants, were convicted in the criminal court of Cook county of the crime of obtaining money by the confidence game. The court sentenced each of them to imprisonment in the penitentiary for a term of not less than six nor more than eight years. The indictment charged that they obtained, from one Dora Koll, $975.

The facts claimed to establish the crime are substantially as follows: On October 22, 1943, Mrs. Koll was accosted on the street by Priola, who showed her a paper which had written upon it "Chicago Store Machine Company," and wanted to know where it was. She suggested that they go to a drug store and look in the directory, but Priola did not want to go to a drug store. She then suggested they ask a policeman, and he did not want to ask the policeman. About that time another man came along to whom Priola beckoned, and this man said his name was Reinhart. Mrs. Koll started to leave when Reinhart (Sternberg) said: "Wait a minute, lady, don't leave me here, what is this all about." She told him that Priola wanted an address, and Priola kept pulling money out of his pocket, and Sternberg said: "You can't leave me here with this, with all this money. You have to see this through." Upon inquiry Priola claimed his brother had been killed in California, and he had obtained a settlement from the railroad company, and was on his way home to Buenos Aires, and stopped in Chicago to see a relative, and had lost the original envelope with the address, and was trying to find him.

Priola talked broken English, and claimed he was Spanish. Sternberg pretended to understand him, and told Mrs. Koll "that this man wants to give some money for any charity we may select," and Mrs. Koll replied that she wanted nothing to do with it. Sternberg then asked her if she was American born, and she answered she was born in Warsaw, Poland. He then said a few words in Jewish, and said the trouble with the Jewish people is they will not help one another. Sternberg said: "Here you can do something for your people without any expense, and you won't give me the little time to do it."

Mrs. Koll further testified: "Sternberg told me Priola would not give any money unless he knows that people are very poor. He has no faith in poor people; we got to show a good amount of money." Mrs. Koll explained she did not have ready cash, but had some money in the bank. She went upstairs to get her bank book, and Sternberg said: "Priola does not understand what bank book means," and that "you will have to show him money," and "you will have to draw your money out." He then said Priola would pay to her and to Sternberg $300 each for them to distribute $5,000 to charity. Mrs. Koll went to the bank and took out $975, leaving a small balance in the bank, and when they got outside Sternberg developed a violent headache, and "asked me if I would get some aspirin, and as I started away he said Mr. Priola will not give us money unless we fully trust one another." Sternberg had a large sum of money in his hand, and said that nobody could get money from Priola unless they fully trusted each other, and said "you let me hold this money." Mrs. Koll further testified: "I started in the drug store, took about a dozen steps, and turned around, and they were both gone, and my money too. I walked up and down and went around the block and across the street, and no sign of them." Altogether she spent about two hours with these defendants, and while it seems strange that she would part

with money under such a representation, yet, the fact remains the evidence shows that six other women, under almost identical circumstances, were defrauded by these same men, obtaining sums, respectively, of $500, a bunch of rings worth $500, and the sums of $1475, $500, $350 and $120. The scheme and procedure was almost identical in each instance.

The first contention is that the offense shown to have been committed was not a confidence game, but only larceny. We have held many times that the gist of obtaining money by the use and means of the confidence game is the confidence which one person inspires in another, with the result of obtaining money. It covers any swindling scheme whereby the swindler wins the confidence of his victim, and by reason thereof takes his money from him. (*People* v. *Marmon,* 389 Ill. 19.) It may be another crime was committed, but that does not prevent prosecution of defendants for obtaining money by the confidence game, as the same act may constitute two or more offenses. (*Nagel* v. *People,* 229 Ill. 598; *People* v. *Singe,* 288 Ill. 113.) The offense was complete when they received the money from Mrs. Koll through her confidence in them.

It is next contended that error was committed in permitting proof of the other cases in which women had been swindled by the same kind of a scheme. It is the general rule that evidence that a defendant has committed a crime, independent of the one charged, is not admissible, but there are exceptions to this rule, and among such exceptions is that of the proof of other crimes tending to establish motive, intent, absence of mistake or accident, identity, and a common scheme or plan so connected that proof of one tends to prove the accusation. We have specifically held that such evidence is proper, in cases of confidence game, to prove intent. (*People* v. *Novotny,* 371 Ill. 58; *People* v. *Marmon,* 389 Ill. 19.) And in this case it was also proper to show a common scheme or design success-

fully used by the defendants to obtain money by the means of confidence inspired in the victims, who hoped to obtain large sums of money for charitable purposes and remuneration to themselves in distributing it. This case comes clearly within the rule that the evidence shows such a concurrence of common features that they necessarily-show a general plan, manifested by causing the different individuals to part with their money. Wigmore's Principles of Proof, 2d ed. p. 227.

It is further contended it was improper to show by the complaining witness that she was a widow; and while it has been held that such fact has no bearing upon the issues involved in a criminal case, yet we know of no instance where a case was reversed where the evidence overwhelmingly proved the charge. The object of the law is to determine whether or not a defendant found guilty has had a fair trial; not whether the case has been tried without any error in procedure. In view of the evidence in the case, we cannot see how this evidence in any way prejudiced the defendants.

Other objections are made as to the form of the question and the method of identification, matters which were largely within the discretion of the trial court. The evidence was so overwhelming in showing the defendants obtained money not only from the complaining witness in this case, but from other persons, by inspiring confidence in the victims, that no question can be entertained of their guilt.

We find no prejudicial errors in the rulings of the trial court, and its judgment is therefore affirmed.

*Judgment affirmed.*