(Nos. 33298, 33299.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HELEN MERO, Plaintiff in Error.

*Opinion filed October 25, 1954—Rehearing denied Dec. 20, 1954.*

EUCLID LOUIS TAYLOR, of Chicago, (WILLIAM L. CARLIN, and LOUIS A. ROSENTHAL, of counsel,) for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, ARTHUR F. MANNING, RUDOLPH L. JANEGA, and ELMER C. KISSANE, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

On March 27, 1953, three indictments were returned in the criminal court of Cook County against the plaintiff in error, Helen Mero, who is hereinafter referred to as the defendant. Each indictment involved the confidence game. The first charged the defendant with having obtained $1700 from Ida Collins on August 28, 1952, and will be referred to herein as the Collins case. The second charged the defendant with obtaining $10,033 from Grace Littleford on May 5, 1952, and will be referred to as the Littleford case. The third charged the defendant with attempting to obtain $3000 from Bertha Gueldenzoph on October 8, 1952, and will be referred to as the Gueldenzoph case.

The defendant waived a jury in each case, and a trial was had before the court. She was found guilty in the Collins case and sentenced to a term of not less than two nor more than three years in the Illinois State Reformatory for Women. She was found not guilty in the Little-

ford case. She was found guilty in the Gueldenzoph case and was sentenced to a term of not less than one year nor more than one year and a day in the Illinois State Reformatory for Women. It was adjudged that the two sentences were to run concurrently.

During the trial of the Collins case, the parties agreed to consolidate the three cases and try them together. It was stipulated that the evidence in the Collins case could be received and stand for evidence in the Littleford case, and it was further stipulated that the evidence in the Collins case could be received and stand for evidence in the Gueldenzoph case.

The defendant prosecutes writs of error to this court seeking to have said judgments of conviction set aside. The two causes, No. 33298 (Collins case) and No. 33299 (Gueldenzoph case), have been consolidated for review by this court.

As regards the Collins case, which we shall consider first, the defendant contends: (1) The State did not establish the guilt of the defendant beyond a reasonable doubt, and there was no proper identification. (2) The alibi evidence of the accused stands unchallenged and undisputed, and the manifest weight of the evidence was against the finding of the court. (3) The State failed to prove criminal intent on the part of the defendant, and the attempted proof of similar offense against Miss Gueldenzoph was inadmissible because the defendant was found not guilty in the Littleford case. (4) There was no proof of *corpus delicti* beyond a reasonable doubt.

Three witnesses testified for the prosecution in the Collins case; namely, the complaining witness, Ida Collins, police officer Joseph L. Cook, and Grace H. Littleford.

Ida Collins, a sixty-five year old married woman, testified to the following: On August 28, 1952, at around 10:30 A.M. she was seated at a counter in a Woolworth store, at which time the defendant approached her, saying

she had just settled a claim for $42,000 as a result of her daughter having been hurt in an accident and asking Mrs. Collins what she ought to do with the money. Mrs. Collins suggested that she put it in a bank, but the defendant said she was afraid to do so since her husband was a gambler. The defendant then told her of having met a woman that morning who had found a bag containing $6500. She said she told the woman to keep the money, but she said she did not want to. While they were thus talking, the defendant saw this woman and called her over. She told her that she had mentioned to Mrs. Collins about her finding the money, and the woman said "you shouldn't have told her anything about it." She then asked the defendant if she still had the settlement money in her purse, and after the defendant replied that she did, the other woman said she had put the $6500 in her boss's desk upstairs where she worked and that she would go ask him what to do with it. She left, and upon returning said "I got a big surprise for you two. * * * My boss told me we can divide the money equally because I saved his daughter's life from drowning and he gave me a lifetime job." She asked the defendant for the money to "show her boss in good faith," and the defendant gave her the purse she was carrying without disclosing its contents. The woman left, but returned saying she had good news as the boss said they should divide it three ways. She then asked Mrs. Collins how much money she had, and Mrs. Collins replied that she had $1700 in the bank. She asked her if she could get it out, and Mrs. Collins answered that she could, as she had her bank book with her. The defendant and Mrs. Collins then went to the bank together, and Mrs. Collins withdrew the $1700, after being told by the defendant to get it in ten dollar bills. They returned to an appointed place to meet the other woman. The latter, after asking Mrs. Collins if she had the money, told her to give it to the defendant. Mrs. Collins then gave the money to the

defendant, who in turn gave it to the other woman. She told Mrs. Collins to go talk to her boss at the Lincoln Building and that he would give her part of her share. Whereupon she left the defendant and the other woman to go to the office to which they directed her. She went to the building, but after being unable to find the boss, returned to where she had left the other two, only to find they had gone. She said "then it dawned on me my money is gone." She reported the matter to the police.

About two weeks later she identified the defendant among three other women at a police showup. She said she had seen the picture of the defendant in the newspaper, and upon recognizing her went to the police and the showup followed.

Police officer Joseph L. Cook, who was the lieutenant in charge of the confidence game detail at the detective bureau, testified regarding the identification of the defendant made by Mrs. Collins at the police showup, which was in operation when Mrs. Collins came in. As she entered, she took one look at the women in the room, pointed at the defendant, said "that's the woman that took my money" and fainted.

Grace Littleford, 68 years of age, testified to the following incident, which she said occurred on May 5, 1952: At around 11:30 A.M., as she had just come from lunch at a drug store, she was stopped by a woman, who patted her on the back, said she looked like an honest woman, and then proceeded to tell her about receiving $10,000 from a bus company for an injury to her nine-year-old daughter. While in the company of this woman, the latter pointed to the defendant and said "there she is," and the defendant walked to where they were. The defendant said "did you tell this woman I had found some money?" and the woman answered "yes, shouldn't I have told her?" The defendant replied "Well, I will have to go back to my boss and ask him what to do because you have told it to someone

else, and if someone else knows it, it isn't well." The defendant left, but returned in about five or ten minutes and said the boss counted $9600 in the bag and said it must be divided in three instead of two. The defendant told the other woman to see the boss. The other woman left, the defendant and Mrs. Littleford staying together, and returned in about ten minutes. She said to the defendant: "I went up to your boss and he showed me a picture of a little girl, the daughter that you had saved from an accident and for that reason you were to have a position with him for life." As the two women then escorted Mrs. Littleford down the street, the defendant told her that her boss said she must show she has finances so that she could repay any of the money he was going to divide among the three. After making arrangements to meet the defendant later on the same corner, the other woman and Mrs. Littleford took a taxi to go to various banks where Mrs. Littleford had money deposited. They went to several banks, and she withdrew amounts totalling $10,033. Upon returning to the same corner, the defendant rushed up to her and said "Oh, I just wondered if you were going to come back in time. My boss is very busy. * * * I will take the money up to him." She gave the defendant the money. The defendant left, and when she returned told Mrs. Littleford to go see the boss, a Mr. Allen of the Northwestern Mutual Life Insurance Company, but to wait a few minutes as he then had a customer. She left them and went to the office as directed, but was unable to find the boss. She returned to the corner, but discovering that they had gone, went to her home in Downers Grove and called the police.

Mrs. Littleford stated that she next saw the defendant on October 9, 1952, at a police showup. There were seven women in the line, she thought, and she asked the defendant to stand out so that she could examine her. Since the defendant had a babushka on her head when she saw her previously, she was permitted to tie a babushka on the

defendant's head. As she was thus examining her, the defendant said "Please lady, don't say I am the one." When she said this, Mrs. Littleford said she recognized her.

Upon cross-examination Mrs. Littleford was asked whether she did not identify a policewoman at another showup, and she said she did not identify the policewoman, but said the latter was as near the height and the size of the other woman who was with the defendant as any in the group.

The defense called police officers George Tambling, Alvin Kunkel, and John T. Allman, all of whom testified regarding the October 9 showup.

Officer Tambling said that the showup, consisting of four women, was commenced when Mrs. Littleford was there but that during the twenty minutes she was in the room before Mrs. Collins arrived she did not identify the defendant. Officer Kunkel, too, said Mrs. Littleford did not identify the defendant. He also testified about the October 29 showup. At this time Lt. Cook asked her if she could identify anyone, and Mrs. Littleford pointed to one of the women in the line and said "that looks like the woman." Lt. Cook told the man who was with Mrs. Littleford that the person she referred to was a policewoman. Police officer Allman also said that Mrs. Littleford did not identify the defendant at the October 9 showup. At the October 29 showup, the witness said Mrs. Littleford picked out a woman she thought looked like the partner, but the person she pointed to was a policewoman.

The defense sought to show by the defendant's testimony and that of Richard Beiderdeck that the defendant was in New York City on August 28, 1952, the day of the alleged crime in the Collins case.

Richard Beiderdeck testified to the following: On August 28, 1952, the defendant was living in the same apartment building where he resided in New York City.

At around ten or a little after in the morning, the defendant came to his apartment to bring his mother a birthday present, August 28 being her birthday. He and his mother were having breakfast at the time, and the defendant stayed for a half hour or so and had a cup of coffee with them. He had tickets for an afternoon play to which he was taking his mother and the defendant, so the defendant left to dress for going out, returning around 12:30 P.M. They went downtown on the subway, got off at Times Square, and stopped at Toffenetti's on Forty-third Street for a light snack. They stayed there an hour or an hour and a half, and then went around the corner to the Henry Miller Theater to see the play. After the play they went to a Chinese restaurant, watched a legion parade, and then went back to the apartment.

The defendant, 28 years of age and unmarried, denied being in Chicago on August 28, 1952, her testimony as to her whereabouts on that date being in substantial agreement with that of witness Beiderdeck. She further denied that she ever obtained any money from Mrs. Collins and said the first time she ever saw Mrs. Collins was at the October 9 showup. She likewise denied obtaining any money from Grace Littleford on May 5, 1952. She said she was in New York City on that date. She stated that the first day she came to Chicago was around October 1 or 2. At the October 9 showup, she said Mrs. Littleford, while examining her, kept nodding her head and said "I couldn't rightfully say. I am not sure."

The foregoing, in substance, is all of the testimony in the Collins case.

The defendant's contentions may be summarized as follows: there is insufficient evidence to sustain the conviction, in that (1) there was no proper identification, (2) the alibi evidence of the accused stands unchallenged and undisputed, (3) there was a failure to prove criminal intent, and (4) there was no proof of *corpus delicti*.

This court will not disturb a verdict of guilty on the ground that the evidence is not sufficient to convict, unless it is so palpably contrary to the verdict, or so unreasonable, improbable, or unsatisfactory as to justify the court in entertaining a reasonable doubt of the defendant's guilt. (*People v.Heaton*, 415 Ill. 43.) Further, the law has committed to the trial court, where a cause is tried by the court without a jury, the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court does not substitute its judgment for that of the trial court. *People v. Renallo*, 410 Ill. 372; *People v. Golson*, 392 Ill. 252.

The gist of the crime of obtaining money by means of the confidence game is the trust or confidence reposed in the swindler, obtained by some fraudulent scheme, trick or device, which confidence is afterwards betrayed and the money or property obtained from the victim, the form of the transaction being immaterial. (*People v. Priola*, 395 Ill. 296; *People v. Shepard*, 358 Ill. 338.) We are satisfied that all the essential elements of the crime charged are present in the testimony of Mrs. Collins. It remains for further consideration, however, to determine if the evidence is sufficient to show that the defendant is the person who committed said offense.

The defendant argues that the identification was not proper and that the alibi evidence of the accused was unchallenged and undisputed. In this connection, it is to be noted that where an identification is positive and the testimony credible, a judgment will not be reversed merely because there was only one identifying witness and a greater number of persons, including the defendant, testified that he was elsewhere when the crime was committed. (*People v. Renallo*, 410 Ill. 372; *People v. Viti*, 408 Ill. 206.) Here the evidence discloses that Mrs. Collins and the person who perpetrated the crime on her were together

for a considerable period of time. Moreover, her identification at the October 9 showup was positive and immediate. Indeed, she fainted as soon as she saw the defendant. Her testimony was not shaken in any material respect despite the vigorous cross-examination to which she was subjected.

As to the matter of alibi, evidence tending to prove an alibi should not be considered alone but in connection with all other evidence in the case. (*People* v. *Maffioli,* 406 Ill. 315, 322.) Additionally, where the *corpus delicti* is proved, together with evidence tending to show the guilt of the defendant, the burden of establishing an alibi rests upon the defendant, although upon the whole case guilt must be proved beyond a reasonable doubt. (*People* v. *Renallo,* 410 Ill. 372, 376.) When the evidence is considered in its entirety we do not believe the evidence of alibi is sufficient to require a reversal of the conviction. For the complaining witness was further corroborated by Mrs. Littleford, who testified to a remarkably similar incident which occurred previously and in which the defendant was also said to be a participant. In *People* v. *Priola,* 395 Ill. 296, we said at pages 299-300: "It is the general rule that evidence that a defendant has committed a crime, independent of the one charged, is not admissible, but there are exceptions to this rule, and among such exceptions is that of the proof of other crimes tending to establish motive, intent, absence of mistake or accident, identity, and a common scheme or plan so connected that proof of one tends to prove the accusation. We have specifically held that such evidence is proper, in cases of confidence game, to prove intent. (*People* v. *Novotny,* 371 Ill. 58; *People* v. *Marmon,* 389 Ill. 19.) And in this case it was also proper to show a common scheme or design successfully used by the defendants to obtain money by the means of confidence inspired in the victims, who hoped to obtain large sums of money for charitable purposes and remuneration to

themselves in distributing it. This case comes clearly within the rule that the evidence shows such a concurrence of common features that they necessarily show a general plan, manifested by causing the different individuals to part with their money."

Counsel for the defendant argues that the evidence of Mrs. Littleford must be disregarded altogether for the reason that in the Littleford case the trial court found the defendant not guilty, even though such finding was made subsequent to the finding of guilty in the Collins case. It does not follow therefrom, however, that the testimony of Mrs. Littleford cannot be considered in the Collins case. Each of these cases must be considered separately. Counsel for the defendant did not object to the admission of Mrs. Littleford's testimony, but merely sought to impeach her testimony by showing she did not positively identify the defendant at the October 9 showup. This latter fact affects the weight to be given to said testimony, but does not affect its admissibility, nor, from a careful reading thereof, so detract from its corroborative value as to render it of no significance. In short, this evidence could properly be considered by the trial court as helping to establish criminal intent on the part of the defendant. We wish to point out in this regard that we do not consider the evidence of Miss Gueldenzoph, which we discuss below, to have any bearing in the Collins case, for the reason that we believe the record of the trial proceedings discloses that this testimony was intended to be applicable to the Gueldenzoph case only.

The final contention of the defense is that the *corpus delicti* was not proved. "Generally speaking, the term *'corpus delicti'* means, when applied to any particular offense, that the specific crime charged has actually been committed by someone. It is made up of two elements: (1) that a certain result has been produced, for example, a man has died or a building has been burned; and (2) that some person is criminally responsible for the act."

(14 American Jurisprudence, Criminal Law, sec. 6.) It is argued that there were no bank books introduced to show the complaining witness had money in the bank or withdrew any money on or about the dates involved. We believe this contention to be without merit. While such evidence would have been proper and helpful to the prosecution in sustaining its proof, still, the *corpus delicti* may be here shown by testimony alone, there being no absolute requirement that the bank books or records of withdrawals be introduced.

The trial judge who heard the witnesses was obviously impressed by the truthfulness of the prosecution witnesses, and, as aforesaid, where the testimony is merely conflicting we are not inclined to substitute our judgment for that of the trial court on the matter of credibility of witnesses. We conclude that in the Collins case the evidence is not so palpably contrary to the court's finding, or so unreasonable, improbable or unsatisfactory as to justify our reversing the judgment of conviction.

We next consider the Gueldenzoph case. As aforesaid, it was stipulated that the proof adduced in the Collins case could be received and stand for evidence in the Gueldenzoph case. The prosecution also called the complaining witness, Bertha Gueldenzoph, and police officers Cook, Tambling and Allman.

Bertha Gueldenzoph, 83 years old at the time of trial, testified to the following: On October 8, 1952, at around 11:00 A.M., while she was in the vicinity of Wilson and Broadway in Chicago and on her way home after shopping, she was approached by the defendant who showed her a roll of money, saying she was going to put the money in the post office but that they would not take it because it was so much. The defendant said she got the money as a result of an accident to her child. At this time, another woman who appeared to be a friend of the defendant came up to them and said she had just found $6000 on the curb-

ing in front of her office. This other woman then went back to tell her boss about it, and upon returning told them he said "why not divide it among you three." Whereupon the defendant left, saying she was going to see the boss, and Miss Gueldenzoph remained with the other woman. The defendant returned in a few minutes and handed some money to the other woman. The latter told Miss Gueldenzoph, in the presence of the defendant, that if she and the defendant "can produce enough to live on for six months we will share up" and told Miss Gueldenzoph to produce that much money. The other woman then called a taxi which took the defendant and Miss Gueldenzoph to the First National Bank. The defendant went with Miss Gueldenzoph into the bank, accompanying her while she got her bank book from her box in the vault. While Miss Gueldenzoph was making a withdrawal, however, the defendant was not with her, having told her previously "I'll wait for you at the door, I don't want to be seen with you." She withdrew $3000. Then she joined the defendant, who told her she had been out walking, and they boarded a State Street bus. The defendant got off at Sheridan and Wilson, telling Miss Gueldenzoph "I get off here and you go as far as Broadway and get off there and I will meet you over there." She did not see the defendant again until she identified her at the police station later that day.

Upon cross-examination Miss Gueldenzoph said the defendant never at any time asked her for money. She further told of asking a man in the bank if he was a police officer and of telling the defendant that she thought they were being followed. At one point in her testimony she said she did not remember saying anything when she appeared before Judge Schiller at a preliminary hearing, and later she testified that she did not talk to Judge Schiller or appear before him at any time.

Officer Cook testified that on October 8, 1952, he went to the First National Bank at around five minutes to twelve

in response to a phone call. He did not see the defendant when he arrived, but did see her when she came through the revolving doors and Miss Gueldenzoph walked up and spoke to her. He was about a foot away when Miss Gueldenzoph said to her "I thought I missed you." He followed them after they left the bank, boarding the bus behind them along with officers Tambling ' and Kunkel. When the defendant got off at Wilson and Sheridan, officers Tambling and Kunkel got off too. He next saw the defendant at the police station, where he brought Miss Gueldenzoph in to see her. As she walked into the room where the defendant was he asked her if she recognized the defendant, and she replied "yes, she was with me." The defendant said "I don't remember ever seeing her."

Officer Tambling testified to his going to the bank on October 8, 1952, seeing the defendant and Miss Gueldenzoph there, and following them when they boarded the bus. He and officer Kunkel arrested the defendant after she got off at Wilson and Sheridan and took her into custody. He was present when Miss Gueldenzoph identified the defendant at the police station, at which time the defendant said she did not know Miss Gueldenzoph. Officer Allman's testimony was in substantial agreement with that of officer Tambling, and upon cross-examination he told of being present when Miss Gueldenzoph was questioned by Judge Schiller at a preliminary hearing.

In addition to the testimony of the defendant pertaining to the charge in the Gueldenzoph case, the defense called Judge Jay A. Schiller and officer Kunkel.

Judge Schiller told of Miss Gueldenzoph appearing before him, along with Mrs. Collins and Mrs. Littleford, when a preliminary hearing was held in his court. The defendant was held for the grand jury on two of the cases, but discharged on Miss Gueldenzoph's complaint, the judge being of the opinion that no crime had been committed. Officer Kunkel testified regarding Miss Gueldenzoph's ap-

pearance before Judge Schiller and of her being questioned at that time by Judge Schiller and the defendant's attorney.

The defendant's testimony was as follows: She had occasion to go to the lobby of the First National Bank on October 8, 1952, at around 12:30 P.M., and while there Miss Gueldenzoph, whom she did not know, came up to her, took her by the hand, and said some men were following her. She pointed to officer Cook and seemed very excited. Afterward she led the defendant by the hand through the revolving doors. She asked the defendant where she lived, and the defendant in turn asked where she lived. After Miss Gueldenzoph said "On the north side," the defendant said "Why don't you go home?" and "I am going north too. * * * I am going up to Wilson Avenue." Miss Gueldenzoph replied "Well, that's in the direction I am going" and that was the end of the conversation. They took a bus in front of Marshall Field's. While in the bus they did not have any conversation. After the defendant reached her destination, Wilson and Broadway, she got off. She was arrested right away and taken into custody. The only time she saw Miss Gueldenzoph was in the bank lobby and she did not go to the bank vault with her. She was not with her in a taxi and did not have any other conversation with her. When officer Cook brought Miss Gueldenzoph in and asked if she knew her, she said she did not know her but had seen her before.

The defendant's contentions in this case are similar to those urged in the Collins case, and most of what we said regarding the Collins case is applicable here. However, the proof in this case is even stronger than in the former case. The complaining witness relates an incident, embodying all of the elements of the crime charged and implicating the defendant therein. She is corroborated in certain particulars by three police officers, who saw her with the defendant, and in the case of one of the officers, overheard conversation between them. In addition, evidence of two

prior schemes involving the defendant was introduced in evidence without objection by defense counsel, and such schemes are practically identical to this one with the exception that in the others money was actually obtained while here there was just the attempt. The testimony of the defendant was not convincing, and in our opinion was discredited in several material respects. We, therefore, conclude that the evidence is sufficient to sustain the judgment of conviction and said judgment should be affirmed.

As a final observation we quote from *People* v. *Krazik,* 397 Ill. 202, at pages 210-11: "The fact that the scheme, representation, and means by which these two men induced their victim to draw the money from the bank was silly and childish does not show the victim did not have confidence in them. In fact many cases which come before us show that people are still prone to rely upon tricks and schemes of this kind, and lose their money, even though to most people it would seem such representations were unworthy of confidence, but one of the reasons the law was enacted is to reach persons who practice their wiles upon the gullible." *Judgments affirmed.*