THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIE THOMPKINS *et al.,* Defendants-Appellants.

(No. 59595; 

First District (5th Division)—April 19, 1974.

George C. Howard, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Lee T. Hettinger, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

After a bench trial, defendants Willie Thompkins, Glenn Lee, Fred Miller and Lawrence Moore were convicted of aggravated battery and attempt murder, and were sentenced, Thompkins to 15 to 20 years and Lee, Miller and Moore to 10 to 20 years. On appeal defendants contend that the evidence is insufficient to prove their guilt beyond a reasonable doubt.

The following evidence was adduced.

*Michael Weaver* testified for the State that:

He is 23 years old, married and lives in Markham, Illinois, with his parents, brothers and sisters, wife and child; that he has known defendants a long time. He joined the Blackstone Rangers in 1964; Thompkins, Lee and Miller were also Rangers. He served in the armed forces from 1967 to 1969 including 11 months in Vietnam and was honorably discharged. He worked as a mechanic for the South Suburban Bus Company. He attended some meetings of the Rangers, but no longer paid his dues. He saw Lee, Miller and Moore on occasion, but they did not speak to him and appeared hostile. He did not see Thompkins between the time of his discharge in August 1969 to the date of the shooting on September 1, 1970.

On August 31, 1970, at about 9:30 P.M. he was at home when he received a phone call from Berwyn Thompkins, Willie's younger brother, asking him to come to their house and escort Willie's girl friend Joyce Mack to her home in Phoenix, Illinois. He arrived there at 10 P.M. Berwyn, Joyce and he talked and played records for about 30 minutes when Willie walked into the living room and said he wanted to talk with him. They went outside and met Lee, Miller, Moore and a friend named Stringfellow and all of them got into Moore's car. Willie and Stringfellow sat in the front seat next to Moore and he sat in the back seat between Lee and Miller.

In response to Willie's questions, he denied that he was a police informer, or that he had seen the Markham police chief in the last two weeks or that he had done anything wrong except not rejoining the Rangers.

Willie gave directions to Moore and when they arrived at 160th Street and Gauger Avenue everyone except Moore stepped out of the car and walked toward a field. Willie kissed him on both cheeks, stepped back, placed his right hand over his chest and said, "All power to the People"

or, "all power to Black-P-Stone." He saw muzzled sparks and felt pain in his chest. He turned to run and heard more shots. His legs gave out and he fell to the ground attempting to cover his head. Two more shots went by his head and a third shot struck his right hand. He pretended that he was dead and they left.

It took him between 30 minutes to an hour to drag himself 75 feet to a nearby house. He scratched the porch of the house with a beer can to attract attention. He estimated that he was shot sometime after 11 P.M. Markham police officer Michael Vest arrived sometime thereafter and an ambulance took him to the hospital. The shots left him paralyzed from the waist down. He feared that his family would be endangered and so he did not tell Vest the truth regarding the shooting. He knew that shots had been fired into homes of two others who were testifying against Willie in another matter. He continued to deny knowing his assailants despite his father's plea that he give the police a truthful statement concerning the shooting incident. On September 5, Markham police Sergeant James Lawrence visited him at the hospital and later that same day Lawrence returned with Detective James Hunt. During the second visit he signed a statement and a complaint against defendants.

On cross-examination, Weaver admitted having seen Willie during the period between his discharge from the army and the night of the shooting.

On the day following his testimony, Weaver was recalled to the stand by the State and corrected his testimony by testifying that he was only 20 years old and that he had never been stationed in Vietnam during the period of his military service. He explained that he falsified his age to the Selective Service so that he could get a job and he lied about his service record to the personnel at the Veterans Hospital in order to obtain a better priority for his medical needs.

*Michael Vest*, for the State:

He is a Markham police officer. On the morning of September 1, 1970, at approximately 1:40 A.M., he was dispatched to 161st Street and Gauger Avenue to investigate a report of a prowler. He found Michael Weaver lying on his stomach scratching a cement porch with a tin can. Weaver had been shot, but denied knowing his assailant. He saw marks on the ground where Weaver had dragged himself. He searched the area, but found no physical evidence.

*James Hunt*, for the State:

He is a Markham police detective. On September 6th he went to Ingalls Hospital to take Weaver's statement. The next day he obtained arrest warrants for the defendants. As he sought to arrest Willie Thompkins on September 8, Willie attempted to flee. After placing him under

arrest, but prior to informing him of the charges, Thompkins said, "Man, you know Weaver is never going to make it to court."

*James E. Lawrence,* for the State:

He is a Sergeant in the Markham police department. On September 6th he and Detective Hunt went to Ingalls Hospital to take a statement from Weaver. He arrested Lee and Miller two days later. When he informed Lee that he was under arrest, Lee said, "You can't pin that * * * Weaver thing on me." This statement was not made in response to a question or anything that Lawrence said.

For the defense:

*Glenn Lee,* testified on his own behalf:

He was visiting his girl friend Lavetta Cotton at her home on August 31, 1970, at about 8:30 P.M. Her mother, father and brother Andre were present. Andre and he went to the basement between 10 and 10:30. They talked and played the guitar until he left sometime after 1 A.M. He was arrested by Sergeant Lawrence on the evening of September 8 as he was walking down the street with two companions. He denied saying anything to Lawrence other than to ask him the reason for his arrest. Lawrence replied that he was charged with the attempted murder of Michael Weaver. He admitted that he is a "Blackstone Ranger" and knew Weaver, Thompkins, Moore and Miller.

*Andre Cotton, Lavetta Cotton and Mrs. Joan Cotton* corroborated Lee's testimony that he had visited their home on August 31, 1970, and did not leave there until well after midnight.

There was a stipulation that a cab picked up a passenger at the Cotton home on September 1st at 2:24 A.M.

*Willie Thompkins,* testified on his own behalf:

He was working on August 31, 1970, at M. A. Lombard & Sons and came home at approximately 4:30 P.M. He left his house for approximately 2 hours to play basketball. He spent the remainder of the evening at home with his parents, three brothers, girl friend Joyce Mack and their two kids. Weaver did not come over to his house that night and he did not see him that evening or the next morning. His girl friend left by cab at approximately 1:30 A.M. The police arrested him on September 8th while he was lying down on his bed. The witness denied saying to the police, "Weaver will never come to Court."

*Willie Thompkins, Sr., Essie Thompkins, Berwyn Thompkins and Joyce Mack,* substantially corroborated defendant Thompkins' testimony.

There was a stipulation that a cab picked up a passenger at the Thompkins' home on September 1, at 1:40 A.M.

*Fred Miller,* testified on his own behalf:

On August 31, 1970, his sister Lois picked him up at about 11:10 P.M. after his shift ended at Interlake Steel and dropped him off at the

home of his friend Kenneth Eady. Eady wasn't there so he walked home, arriving at 11:35 P.M. He telephoned his girl friend Betty Harris and talked to her for a short time and then fell asleep on the living room couch only to be awakened a short time later by his father who told him to go to bed. He went to bed before midnight. He denied seeing either the other defendants or Weaver that night.

*Lois Miller, Fred Miller, Sr., Betty Harris and Russell Nyberg*, substantially corroborated defendant Miller's alibi testimony. Nyberg, personnel foreman for Interlake Corporation, produced Miller's time card indicating that it had been "punched out" at just after 11 P.M. on August 31.

*Lawrence Moore*, testified on his own behalf:

On August 31, 1970, he and Stringfellow drove to Chicago, returning to Markham at approximately 9 P.M. After dropping off Stringfellow, he drove directly home. He left his house only for a short time to go to the store for his mother. Upon returning, he telephoned his girl friend Willa Handy, and they talked for approximately a half hour. He called her again at 11:15 P.M. and they talked for nearly three hours. The witness denied having any knowledge of the shooting of Weaver.

*Willa Handy* substantially corroborated Moore's alibi testimony.

Moore's mother Helen Maynard in addition to substantially corroborating Moore's alibi testimony also testified that she received a phone call from Weaver on the second Sunday in September. Weaver told her that "Lawrence is being framed" and that she should bring a lawyer to Hines Hospital and Weaver would give him a statement. She did not, however, go to the hospital.

OPINION

Defendants contend that the evidence was insufficient to establish their guilt beyond a reasonable doubt. They argue that Weaver lacked credibility, that his testimony was controverted by each of the defendants and their alibi witnesses, and that extrinsic evidence substantiated defendants' testimony.

Defendants' attack on Weaver's credibility, among other things, points to the fact that he lied about his age and his military service during his first appearance on the witness stand, that he originally told the police that he was unable to identify his assailants, and that he offers no motive why defendants would shoot him. They urge that the testimony of defendants and their alibi witnesses supported by such extrinsic evidence as Miller's time card and taxi cab records precludes their convictions based solely on Weaver's testimony. Thus, they raise the questions of credibility of witnesses and the weight to be given to their testimony.

■■ It is neither the duty nor the privilege of this court on review to substitute its judgment for that of the trial judge and we cannot reverse a criminal conviction unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Nicholls*, 44 Ill.2d 533, 256 N.E. 2d 818.) The testimony of a single witness, where it is positive and the witness is credible, is sufficient to convict even though such testimony is contradicted by those accused (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631) and their alibi witnesses. (*People v. Ackerson*, 37 Ill.2d 117, 224 N.E.2d 849; *People v. Mero*, 4 Ill.2d 327, 122 N.E.2d 796.) Furthermore, the mere presence of conflicting evidence will not justify us in differing from the finding by the trier of fact. *People v. Reese*, 54 Ill.2d 51, 294 N.E.2d 288.

■■ We have extensively reviewed the record and find no basis to interfere with the trial judge's evaluation of the evidence. The trial judge found the victim's testimony to be credible and chose not to believe defendants' alibi evidence. We cannot say that these determinations were manifestly erroneous. Here, Weaver's positive identification is significant since he had ample opportunity to observe the defendants and had known each of them for many years. We do not believe that Weaver's credibility is impaired by his inability to offer a motive for defendants' actions, or by his failure to promptly identify his assailants or because of his misstatements at trial concerning his age and place of military service. These matters were explained in part or corrected by his subsequent testimony and, in any event, the trial judge could properly give greater weight to Weaver's testimony recounting the events on the night of the shooting.

■■ Defendants also argue that their alibi testimony should not have been disregarded and that it was sufficient to create a reasonable doubt as to their guilt. The trial judge is not obliged to believe the alibi testimony over the positive identification of those accused, even though the alibis may be established by a greater number of witnesses. (*People v. Jackson*, 54 Ill.2d 143, 295 N.E.2d 462; *People v. Gaiter*, 8 Ill.App.3d 784, 291 N.E.2d 172.) Here, the testimony of defendants and their alibi witnesses was considered with regard to their relationships, age, candidness, fairness, intelligence and demeanor at trial. The trial judge who observed the witnesses, was fully justified in discounting their testimony even though these witnesses were not impeached. (*See People v. Ellis*, 26 Ill.2d 331, 186 N.E.2d 269.) The time card indicating that Miller was at work until 11 P.M. on the night in question and the records of the taxi cabs that indicate passengers were picked up at the Thompkins and Cotton homes at 1:40 A.M. and 2:24 A.M. respectively, do not, as those defendants suggest, necessarily corroborate their alibis. Since the

precise time of the shooting is uncertain, the extrinsic evidence offered does not foreclose defendants' participation in the crime. Where, as here, the trial judge's finding was based on sufficient evidence, this court will not reverse. We find the defendants were afforded a fair trial and that their guilt was established beyond a reasonable doubt.

The judgments of the circuit court are affirmed.

Affirmed.

SULLIVAN, P. J., and BARRETT, J., concur.