**People of the State of Illinois, Appellee, v. Robert L. Haywood, Appellant.**

**Gen. No. 50,464.**

First District, Second Division.

June 21, 1966.

Frank J. Merrill, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Stuart P. Shapiro, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BRYANT delivered the opinion of the court.

This is a writ of error to the Criminal Court of Cook County. The defendant, Robert Haywood, was found guilty and indicted under 62–928 which consisted of one count for robbery, one for rape and one for deviate sexual assault. The defendant pleaded not guilty and waived trial by jury. He was tried by the court and found guilty on all counts.

The defendant was convicted by testimony which the trier of the facts had a right to find proved his guilt beyond a reasonable doubt. The identification of the complaining witness was positive and testimony that she was raped, robbed and victim of a deviate assault was fully corroborated. These acts were by force and against complainant's will.

On March 26, 1962, the complainant, June Prichett, who was a teacher in the Chicago public schools, was walking home when she saw the defendant run towards her from across the street. As she approached her home, the defendant walked up to her and with his hand in his pocket exclaimed, "Give me your purse lady. Don't scream or I'll kill you." He took the purse, grabbed her arm and forced her into the basement entrance of a nearby home. She was pushed into a stooping position and forced to commit a deviate sexual act involving her mouth and the sex organ of the defendant. He then pushed her against the stairs and by force and against her will had sexual intercourse with complainant. Defendant then proceeded to take $17 from the purse of complainant and again forced her to engage in another act involving deviate sexual conduct. During the commission of these offenses, defendant continuously remarked that the complainant knew him and that he feared she would tell her husband.

When defendant finally allowed Mrs. Prichett to leave, she immediately ran home and crying hysterically told

her mother-in-law of this dreadful experience. The latter testified that the victim's clothing was very dirty. Her shoes were "very muddy" and her hair was "very much disarranged." "She was just screaming and crying as she was going upstairs." Mr. Prichett was notified and quickly came home to find his wife crying and hysterical. Shortly thereafter, the police arrived and took the complainant to the hospital.

At the trial Mrs. Prichett testified that at that time she did not know the man who committed the acts but that when he walked up behind her and took her arm and threatened her as if he had something under his coat, she was terrified and said that she did not want anything else to happen to her, and when he took her in the building and performed the acts of rape and deviate sexual assault that she had ample opportunity to see him and to know that he was the man involved. She also testified that after she and her husband went to the police station before she had seen and identified the defendant as her molester that the defendant approached Mr. Prichett and said "Your wife is accusing me of rape." This was before Mr. Prichett had indicated in any way he was connected with the case. Mr. Prichett had known the defendant, as he (Mr. Prichett) was a director of Park Activities of Ogden Park and this young man had been at the park several times and had seen Mrs. Prichett and Mr. Prichett, but had not been introduced to her and did not know of her connection with Mr. Prichett. This accounts for his mutterings all the time during the rape "Your husband knows me, doesn't he?" and "Don't you know me," and remarks of that nature which indicates that he was afraid of apprehension. Mr. Prichett later identified the assailant as the same man who had dealt with him at the park and Mrs. Prichett picked him out in a lineup and said that he was the man who committed the acts. This identification of the defendant was made by the complainant and was reaffirmed by pick-

ing him from the lineup and was again later reaffirmed from the witness stand and there seems nothing more that she could have done to identify him. He was positively identified.

■ As to the robbery, there was sufficient evidence of forcible taking from the complainant because she was in fear for her life or of serious bodily harm at the time the money was taken from her, and subsequent thereto when she was downstairs in the basement of the house. She was under fear of death and that is sufficient to sustain the indictment for robbery.

■ As to the force necessary for a conviction of rape and deviate sexual attack, she was taken and forced under fear of death to submit to the rape and the deviate sexual attack. She complained immediately after the termination of the attack to her mother-in-law at her home. People v. Scott, 407 Ill 301, 95 NE2d 315 (1950). She ran directly from the scene of the assault to the scene of her mother-in-law's house and there her mother-in-law testified that she entered and told her of the events that had just happened.

> "On review, this court will not disturb a finding of guilt unless it is palpably contrary to the weight of the evidence or is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of a defendant's guilt." People v. Litberg, 413 Ill 132, 139, 108 NE2d 468, 471 (1952).

The defendant relies upon testimony of others supposedly supporting his defense of alibi. He produced Bernice Benjamin, who was fifteen years of age and attended Parker High. She left him at 7:30 p. m. near the school grounds. He was with two other girls. He also produced Annie Baliss. She testified that she was his girl friend and that she went with Haywood to the eye doctor's office with the other girls. About 7:30 p. m.

she left him across the street from the playground in the company of the other girls. He produced Mary Holmes. She testified they left the school yard at 7:00 p. m. and played in the street near 70th and Sangamon Streets. At about fifteen minutes before 8:00 p. m. she left Haywood in front of the Walgreen Store at 69th and Halsted Streets. He produced Magnolia Hughes. She gave no time in regard to where he was that night. He produced Lilly Bell Terrell, who testified that she is Robert Haywood's sister. She testified that at about 9:00 p. m. on March 26, 1962, he came to her house at 5845 S. Union Street. He also produced Deplissi Drew. He testified that although he was uncertain of the exact date, he did remember that Haywood came to his store one night about 8:00 p. m. in the latter part of the month. He came to get a record player which he left there. The events here charged actually took place between 8:00 and 9:00 p. m. on the night in question and this alibi was of not sufficient verity to constitute a good defense and raises a factual conflict which was clearly the province of the judge trying the case to resolve. His actions at the time of the commission of the offenses charged, are not corroborated by the testimony of any of his witnesses. There is a corroboration gap of at least one hour between the time he left the girls and arrived at his sister's house, and this gap is the exact period of time in which the offenses occurred. This does not constitute an alibi.

"The jury saw and heard the witnesses as to identification and as to the alibi, and it was for it to determine the weight to be given to the testimony. (People v. Leach, 398 Ill 515; People v. Bloom, 370 Ill 144.) Although the identifying witnesses did not observe the intruder under highly favorable conditions and there was evidence of an alibi, this does not, in the face of positive identifi-

107

cation, require a reversal, and the identification, being certain and credible, is sufficient to sustain the verdict. People v. Auriene, 361 Ill 440; People v. Gasior, 359 Ill 517." People v. Maffioli, 406 Ill 315, 322, 94 NE2d 191 (1950). See also People v. Thomas, 409 Ill 473, 478, 100 NE2d 588; People v. Mero, 4 Ill2d 327, 336, 122 NE2d 796.

We therefore affirm the decision of the Judge in the lower court and find that the judgments on Indictment 62–928, finding the defendant guilty on Count No. 1, where he was sentenced to the Illinois State Penitentiary for an indeterminate sentence of three to six years for robbery; the decision under Count No. 2 of the same indictment, where he received an indeterminate sentence of ten to twenty years for rape; and of Count No. 3, where he received an indeterminate sentence of five to ten years for deviate sexual assault, with all sentences running concurrently, were a proper disposition of the case.

Judgment affirmed.

LYONS and BURKE, JJ., concur.