The People of the State of Illinois, Plaintiff-Appellee, *v.* Hershel Gaiter, Defendant-Appellant.

(Nos. 55182, 55597 cons.;

First District—November 22, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and William C. Braverman, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE ENGLISH delivered the opinion of the court:

OFFENSES CHARGED

Armed robbery. (Ill. Rev. Stat. 1967, ch. 38, par. 18—2.) Aggravated battery (2 counts). Ill. Rev. Stat. 1967, ch. 38, pars. 12—4 (b—7) and (b—1).

JUDGMENT

After a bench trial, defendant was found guilty of armed robbery and both counts of aggravated battery, and admitted to five years' probation, with the first year to be spent at Vandalia State Prison Farm.

CONTENTIONS RAISED ON APPEAL

1. Defendant was not proved guilty beyond a reasonable doubt because the identification of defendant by the prosecution's only eyewitness was vague, doubtful and unworthy of belief.

2. It was error for the trial court to find defendant guilty when he had a consistent and corroborated alibi.

3. The trial court committed reversible error when it allowed the introduction of hearsay testimony by the arresting officer relating to what the complaining witness had said concerning defendant's identification.

EVIDENCE

*Arthur Matthews,* for the State:

He has been a Chicago Transit Authority bus driver for ten years. On July 3, 1969, between 5:00 and 5:30 P.M., he was driving his bus south on Pulaski Road when he approached a large rush-hour crowd at Madison Street. A group of people entered the bus and three men stayed up front, standing behind him and to the side as he approached Van Buren Street. Someone said, "Off here," and as he opened the door, defendant said, "Grab it." The other two men pushed him back in the seat and defendant grabbed the money changer which was on a tray to the front of him and slightly to his right. Defendant said, "Get the bag," referring to a small leather bag in which bus drivers carry additional money and other articles. One of the men grabbed the bag, but Matthews held on to one of the handles. Defendant then produced a knife, said

"Let's go," and cut Matthews across the hand with the knife. The witness released the bag and the three men fled through the open door of the bus and ran west down Van Buren Street. It was a bright day and he described defendant to the police as wearing a light grey jacket, light complected, tall, slender build, 150 to 160 pounds, 5'10" to 6' tall, 19 to 20 years of age, with no beard, moustache, or other identifying marks.

On July 11, 1969, a police officer came to his home with a large number of pictures, most of which were Negroes but may have included some Mexicans or Puerto Ricans. He identified defendant's picture from the group of photographs. At the time defendant was brought in for a preliminary hearing, Matthews recognized him in the hallway of the court and told the officers that he was the man who had robbed him.

*Thomas Lahm*, for the State:

He was a detective for the Chicago Police Department. On July 5, 1969, he received a phone call from an anonymous person who had been on the bus at the time of the robbery. The person identified defendant by name as the person who had committed the crime. He obtained defendant's photograph and on July 11, 1969, took the picture and 10 to 15 others to the bus driver for possible identification. Hershel Gaiter was identified by the driver as one of the men who committed the robbery. Later, the bus driver, Mr. Matthews, also pointed out defendant to him in the hall of the Criminal Courts building.

*Yvonne Sturgis*, for the defense:

She was defendant's girl friend. On July 3, 1969, at approximately 10:30 A.M., she met defendant at his mother's house at 3851 West Monroe Street. At about 11:00 A.M., she was driven by Dillard White to 7805 S. Aberdeen with defendant and defendant's sister, Glenda Luster. They arrived about noon, and defendant did not leave until 7:00 or 7:30 that evening when they drove back to the west side for a party. She last saw defendant at his mother's home at 8:30 that evening. Defendant's home is about a block from Pulaski and one-half block from Madison Street. He was wearing a white tee shirt and dark pants on the 3d of July.

*Glenda Luster*, for the defense:

She is defendant's sister. On July 3, 1969, at about 10:00 A.M., she saw her brother at her mother's house which is located at 3851 West Monroe. At about 11:30 A.M., or 12:00, she left that address with her cousin, Dillard White, her brother, and Yvonne Sturgis and drove to 7805 S. Aberdeen. There was a party planned for the next day, which was her mother's birthday as well as the 4th of July, and everyone was needed to clean up the house. She did not see defendant leave the premises until about 7:00 or 7:30 P.M. when they drove back to the

west side. Defendant was cleaning the basement the entire time and was wearing blue jeans and a sweatshirt.

*Versie Gaiter,* for the defense:

She is defendant's mother. Her son lives with her at 3851 West Monroe St. She corroborated the testimony of the other defense witnesses to the extent that they had been at her house until about 11:00 A.M. on July 3, 1969, when they left to prepare for a party, and her son did not return home until about 7:30 P.M.

*Hershel Gaiter,* on his own behalf:

His testimony matched that of the previous defense witnesses. He denied leaving the house at 7805 S. Aberdeen at any time before about 7:00 P.M. on July 3, 1969. He also denied owning a knife. On a previous occasion he had been mistakenly arrested for a burglary committed by another person who lived nearby.

OPINION

■■ Defendant's first contention is that he could not have been proved guilty beyond a reasonable doubt because the bus driver's identification of him was vague, doubtful and unworthy of belief. He argues that we should be guided by the decisions in *People v. Kincy,* 72 Ill.App.2d 419, 219 N.E.2d 662, and *People v. Reed,* 103 Ill.App.2d 342, 243 N.E.2d 628. In those cases, however, convictions were reversed primarily because the victim failed to give any facial identifications of the defendants and identified them solely by their clothing. In the present instance, the sole identifying witness gave a far more complete description of the robber than in either *Kincy* or *Reed.* Besides giving an accurate overall physical description, he was able to assert positively that defendant was light complected and did not have a beard or moustache nor recognizable scars or marks. In approximately two minutes from the time defendant boarded the bus until he fled, the driver testified that he had observed defendant in the mirrors of the bus as well as face to face at the time defendant slashed his hand. Recognition of defendant's picture from a group of photos and identification of defendant himself in the hall of the Criminal Courts building lend additional weight to the driver's prior description. We find the identification sufficiently credible and specific to support defendant's guilt. See *People v. Haywood,* 2 Ill.App.2d 109, 218 N.E.2d 790.

Defendant also suggests that the identification was vague and uncertain because the police officer could not say what defendant looked like, based on what he had been told by the driver. The fact that the investigating officer could not relate in detail the driver's description of the robber does not lessen the weight of the driver's own identification of the robber.

Next, defendant argues that it was error for the trial court to find defendant guilty when he had a consistent and corroborated alibi. To be sure, the testimony of defendant's friends and family concerning his whereabouts on the day of the crime is strikingly similar. However, there is an inconsistency in the consistency of their statements. The time of 7:00 to 7:30 P.M. is referred to as both the time defendant left the south side apartment of his cousin and the time he arrived at his west side home. Defendant's mother testified that her son returned home to the west side at 7:00 or 7:30 P.M., and his cousin, sister and girl friend state that was the time they left the south side with defendant to return home. Since Yvonne Sturgis, defendant's girl friend, said the trip takes approximately one hour, defendant could not have left the south side at 7:00 or 7:30 and arrived at the west side at the same time.

■■■ Although there is but one eyewitness who is contradicted by four whose testimony gives defendant an alibi, it is for the trial judge to weigh their testimony and determine their credibility. (See *People v. Haywood*, 72 Ill.App.2d 109, 218 N.E.2d 790.) When there is a positive identification by only one witness who had ample opportunity to observe defendant at the time of the offense, his identification may be sufficient to support the conviction. (*People v. Mack*, 25 Ill.2d 416, 421, 185 N.E.2d 154; *People v. McMath*, 104 Ill.App.2d 302, 244 N.E.2d 330.) This court will not interpose its judgment on such matters unless it is based on clearly unsatisfactory and improbable evidence and leaves reasonable doubt of defendant's guilt. (See *People v. Neiman*, 30 Ill.2d 393, 197 N.E.2d 8.) Defendant points out that while the bus was crowded, no other witnesses were called to corroborate the driver's identification testimony. It is well established, however, that corroboration is not necessary where the testimony of the complaining witness is clear and convincing. (*People v. Walden*, 19 Ill.2d 602, 608, 169 N.E.2d 241.) Here, Matthews' identification was accurate and consistent. The trial judge found him to be "an extraordinary man," whose identification was "sure" and "positive," and the judge obviously believed his testimony and disbelieved that of the defense witnesses. In each of the cases cited by defendant, the sole witness' identification was far less certain. See *People v. McGee*, 21 Ill.2d 440, 173 N.E.2d 434; *People v Gardner*, 35 Ill.2d 564, 221 N.E.2d 232; *People v. Fiorita*, 339 Ill. 78, 170 N.E. 690.

Next, defendant maintains that the court committed reversible error when it allowed the introduction of hearsay testimony by the arresting officer concerning what the complaining witness said about defendant's identification. At the trial, Officer Thomas Lahm testified that on July 11, 1969, Mr. Matthews, the bus driver, was shown a group of photographs for possible identification. The officer stated that Matthews "went through

the photos and identified one of [them]." Officer Lahm then pointed to Hershel Gaiter as the man identified by Matthews.

■■■ We agree that the statement was hearsay; however, at the time of its admission, no objection was raised by defense counsel and we believe beyond a reasonable doubt that if there was error in this regard, it was harmless error. (See *People v. Thome*, 111 Ill.App.2d 215, 221, 250 N.E.2d 9.) All the essential facts were established by a credible witness whose testimony was properly admitted in evidence. (See *People v. Taylor*, 80 Ill.App.2d 310, 225 N.E.2d 167, and *People v. Landgham*, 122 Ill.App.2d 9, 24, 257 N.E.2d 484.) As to the pictures, Matthews himself testified that he was able to identify defendant when they were shown to him, and, in addition, he gave a prior sufficient verbal description of the robber. Thus, Officer Lahm's testimony was unnecessary to the proof of the case and was merely cumulative in nature.

The judgment is affirmed.

Judgment affirmed.

LORENZ, P. J., and DRUCKER, J., concur.