THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MERRILL SCOTT *et al.,* Defendants-Appellants.

(No. 58784;

First District (3rd Division)—June 20, 1974.

Paul Bradley, of the State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Defendants, Merrill Scott and Henry Crutcher, were indicted for armed robbery, theft, and unlawful restraint. After a joint trial in the circuit court of Cook County the jury found defendants guilty of all three offenses. Scott was sentenced to 10 to 24 years in the penitentiary for armed robbery and 1 to 2 years for unlawful restraint, the two sentences to run consecutively. Crutcher was sentenced to 8 to 16 years for armed robbery and 1 to 2 years for unlawful restraint, the two sentences to run consecutively. Defendants have appealed.

Both defendants contend that they were not proved guilty beyond a reasonable doubt, that the trial court improperly admitted hearsay identification testimony into evidence, and that their sentences were excessive. In addition, Scott contends that the lineup at which both he and Crutcher were identified was unduly suggestive.

We affirm as modified.

The facts follow. The complaining witness, Steven James, testified at trial that on April 5, 1972, at 9:30 P.M., he drove his new automobile into the alley behind his home. As he pulled into the alley he saw three men walking together toward the front of his car. James unlocked the door of his garage, which faced the alley, and backed his car into it. As he was sitting in his car with the garage door open, he observed the three men walk by. When they had passed James got out of his car and locked the car door. Immediately thereafter he remembered that he had locked his cigarettes in the car. While he was looking for the cigarettes, one of

the three men he had seen in the alley, identified as defendant Scott, placed the barrel of a .38-caliber revolver to his left side. Scott searched him and removed his billfold which contained $41. Two other men entered the garage. One of them, whom James identified as Crutcher, placed a revolver to his head. James was told to lie face down on the garage floor. He remained on the floor for 4 to 5 minutes, during which time he was again searched. His watch, keys, gloves, and cigarettes were taken.

Defendant then put James into the trunk of his car and drove away. He remained in the trunk for approximately 2 hours but was unable to ascertain where the men were driving. While he was in the trunk he heard one of the men say that he was going to kill him. He heard another man object. When the trunk was finally opened, he saw three men, two of whom he identified as defendants. They pulled him out of the trunk and forced him to walk approximately 75 feet in a bent over position until they reached an abandoned building. Once inside the building Scott bound James with a belt and took the coat that he was wearing. After his assailants had left, James freed himself, signaled a squad car to stop, and reported the incident.

On cross-examination, James testified that he gave a description of his car to the first police officer he encountered but did not give a description of his assailants until another group of police officers arrived at the scene. James could not remember the clothing that the men were wearing nor could he give any description of the third man who was involved. Officer Guisinger of the Chicago Police Department testified that he arrived at the scene at about 11:30 P.M. or 11:45 P.M. that night and interviewed James for over an hour. According to the police officer James described one of the men as a male Negro, between 18 and 23 years old, about 5'10" tall, 150 lbs., black or brown hair, brown eyes, and medium complexion and the other man as a male Negro, 5'8" tall, 150 lbs., black hair, brown eyes, and medium complexion.

The testimony further showed that there were no lights in the garage, but that a lamp in the alley near the garage provided illumination. At various times during the episode defendants told James not to look at them. However, James maintained that he looked at them every chance he had. The testimony further showed that James' driver's license restricted him by requiring him to wear corrective lenses while driving. At the time of the robbery and thereafter he was not wearing his glasses. He explained that he only needed his glasses for reading and that he could drive his car without wearing them.

Defendants' arrest occurred as a result of the description of James' new car. At 4 P.M. on April 6, 1972, the day after the incident, Officer Cronin

of the Chicago Police Department observed four men in a car proceeding suspiciously, very slowly, westbound on Fillmore Avenue, as he was proceeding eastbound in a squad car. Officer Cronin did not realize that the car had been stolen until he passed it and noticed the license plate number to which he had been alerted. He chased the car but momentarily lost sight of it. He also radioed for assistance and gave a description of the two men he observed in the front seat of the car to other police officers. He testified that he described the clothing that the men were wearing. He described one as wearing a dark black fur coat and the other as wearing a green army type jacket and a beard. Approximately 5 minutes later, Officers Bolton and Anderson returned in their squad car with two men in the back seat to the location at which the stolen car had been abandoned and Officer Cronin identified the two men by their faces as the men he had observed earlier. Likewise, at trial, he identified defendants as the men he had observed in the front seat of the stolen car. Officer Anderson apprehended defendants near the location where Officer Cronin first spotted them. He recognized them walking together on the street by the description which Officer Cronin had given.

At a lineup which the police conducted on April 7, 1972 James selected both defendants from a group of six men and positively identified them as two of his assailants. Officer Cronin and Assistant State's Attorney Fagan testified, in addition, that James had selected defendants at the lineup. As the men were leaving the lineup area, James noticed that Crutcher was wearing the coat that James wore during the robbery and abduction. However, James testified that he selected Crutcher at the lineup by his facial features. James further testified that before the lineup the police telephoned him and told him that they had someone in custody. They did not tell him how many suspects they intended to place in the lineup. Officer Cronin testified that he recognized defendants at the lineup as the men he had observed in the front seat of the stolen car.

The prosecutor introduced into evidence James' coat which was allegedly taken and later recovered from Crutcher. Officer Guisinger testified that although his report of the incident did not indicate that a coat had been taken, it did show that the officer observed that the complaining witness was not wearing a coat at the time. Aside from the coat and automobile, the police did not recover any of the other stolen items.

The defense did not present any evidence.

Scott contends that the lineup at which he and Crutcher were identified was unduly suggestive and that the trial court committed reversible error when it denied Scott's pre-trial motion to suppress all identification

testimony. Scott's motion alleged that the manner in which the police conducted the lineup was a denial of due process. In particular, Scott argues that the lineup was suggestive in that he stood apart from the others in terms of age, height, and the fact that he was the only person who had a full beard.

The lineup included six male Negro subjects, two of whom were the defendants. Scott was in position number 1 and Crutcher was in position number 4. Scott was age 28 at the time; Crutcher was 19. The other men were aged 18, 20, 19, and 18 respectively. At the hearing on the motion to suppress, a police officer who witnessed the lineup testified from a photograph of the lineup that two subjects were approximately the same height as Scott. We were unable to examine the photograph itself, which was later introduced into evidence at trial, as it was not included in the record on appeal. We infer from the record, however, that Scott was the tallest member of the lineup. The police witness further testified that the police tried to find someone else in the lockup who had a beard but were unsuccessful. At the conclusion of the hearing the trial court found that any identification testimony that James might give would not be tainted by the lineup and denied the motion. We find no reversible error in the trial court's ruling.

■■ Whether a pre-trial confrontation offends due process depends on whether based on the totality of circumstances the confrontation was unnecessarily suggestive and conducive to irreparable mistaken identification. (*Stovall v. Denno*, 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967; *People v. Blumenshine*, 42 Ill.2d 508, 250 N.E.2d 152.) The defendant has the burden of proving that the lineup procedure was unfair. (*People v. Blumenshine, supra; People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1.) In the instant case we find that the police did not conduct a lineup which violated Scott's constitutional right of due process. Although Scott was the tallest member of the lineup, there were two other members who were close to him in height. Slight differences in height are of little consequence. (*People v. Prignano*, 2 Ill.App.3d 1063, 278 N.E.2d 128, *cert. denied*, 409 U.S. 851.) Although Scott was 28 years old at the time and the other members were from 18 to 20 years old, there was testimony that all six members looked to be approximately the same age.

■■ The most serious challenge to the lineup is that Scott was the only member to have a full beard. However, we do not find this feature of the lineup to constitute a denial of due process under the circumstances. It is significant that James did not mention a beard in any of his prior descriptions, even conceding that these descriptions were rather general in nature. (See *People v. Bates*, 9 Ill.App.3d 882, 293 N.E.2d 358.) At trial James' testimony was that he was not sure he noticed a beard at the time

he was robbed. The lineup was conducted 2 days after the occurrence when James' recollection of his assailants was relatively fresh. The police required all members of the lineup to speak the same words. The witness selected Scott from the lineup partially because of his voice. He was positive of his identification. In addition, it is noteworthy that the police searched the lockup for another man with a beard. Under all these circumstances we find that the trial court did not err in concluding that the lineup was not unnecessarily suggestive. See *People v. Keane*, 127 Ill.App.2d 383, 262 N.E.2d 364.

■■ Even assuming that the lineup was impermissibly suggestive, we find that based on the totality of circumstances James' identification stemmed from his observation of Scott at the time of the crimes and had an origin independent of the lineup proceedings. (*Neil v. Biggers*, 409 U.S. 188, 34 L.Ed.2d 401, 93 S.Ct. 375; *Stovall v. Denno, supra; People v. Blumenshine, supra.*) A review of the trial testimony shows that James had more than adequate opportunity to observe both defendants on the night the crimes were committed. James had opportunities to observe defendants in the alley near his garage, at close range in the garage while they threatened him with deadly weapons, at close range in the alley where they drove him and removed him from the trunk, and at close range in the abandoned building where Scott tied him up. The lighting conditions, while not ideal, were adequate. Because of defendants' warnings, James was only able to glance at them at first. By the time the episode had finished, however, he had managed to get a good look at them. That James was not wearing his glasses during the robbery and driving under a restricted license are factors that go to the weight of his testimony. *People v. Lawrence*, 72 Ill.App.2d 1, 217 N.E.2d 120.

■■ Defendants' second contention is that they were not proved guilty beyond a reasonable doubt. We find it significant that not only did James' identification testimony connect defendants with the crimes but so did the identification testimony of Officer Cronin that he observed defendants in the stolen car and James' black fur coat which the police recovered from Crutcher. This other evidence of guilt more than overcomes any deficiency that we could perceive in the identification testimony of the complaining witness in that he could only muster a general description of the defendants. *People v. Brown*, 51 Ill.2d 271, 281 N.E.2d 682.

Officer Cronin positively identified both defendants in court, and at the scene. His observation of the defendants occurred under ample lighting conditions during daylight hours. His description of defendants led to their apprehension. In its totality we find the proof in the record sufficient to sustain the jury's verdicts. The cases cited by defendants to support reversal are inapposite for the reason that they deal with cases in

which defendants presented strong and corroborated alibi evidence in opposition to vague, doubtful, or otherwise unsatisfactory identification.

Defendants' third contention is that the testimony of a police officer and Assistant State's Attorney that James had identified defendants at the lineup was plain error which requires reversal. Defendants raised no objections to this testimony at trial. The testimony, although hearsay and objectionable, was merely cumulative to James' identification testimony. (*People v. Lowe*, 112 Ill.App.2d 399, 251 N.E.2d 329.) In view of this and other competent evidence of guilt, we find the error, if any, to be harmless. *People v. Gaiter*, 8 Ill.App.3d 784, 291 N.E.2d 172.

Defendants' final contention is that the consecutive sentences were excessive. We agree that the provision of the Unified Code of Corrections which pertains to the sentences involved dictates that the sentences for armed robbery imposed on each defendant be reduced. The relevant portion of the Code provides in pertinent part:

"(c) The aggregate maximum of consecutive sentence shall not exceed twice the maximum term authorized under Section 5—8—1 for the most serious felony involved. The aggregate minimum period of consecutive sentences shall not exceed twice the lowest minimum term authorized under Section 5—8—1 for the most serious felony involved * * *." Ill. Rev. Stat., 1973 Supp., ch. 38, sec. 1005—8—4(c).

The trial court imposed an aggregate minimum sentence of 11 years on Scott. (10 years for armed robbery and 1 year for unlawful restraint.) Under the above statute the maximum aggregate minimum sentence would be 8 years. (Twice 4 years, the lowest minimum for armed robbery, the most serious felony involved.) The trial court imposed an aggregate minimum sentence of 9 years on Crutcher. (8 years for armed robbery and 1 year for unlawful restraint.) As in the case of Scott, under the above statute the maximum aggregate minimum sentence would be 8 years.

Section 5—8—4(c) is applicable to both defendants in the instant case because their appeals were pending on January 1, 1973, the effective date of the Unified Code of Corrections, and because application of the Code would result in a reduction of the sentences imposed under the prior law. *People v. Chupich*, 53 Ill.2d 572, 295 N.E.2d 1.

■■ Accordingly, we reduce Scott's sentence of 10 to 24 years for armed robbery to a term of 7 to 24 years. This reduced term is to be consecutive to the term of 1 to 2 years for unlawful restraint. Likewise, we reduce Crutcher's sentence of 8 to 16 years for armed robbery to a term of 7 to 16 years. This reduced term is to be consecutive to the term of 1 to 2 years for unlawful restraint.

The prosecution argues that section 5—8—4(c) was amended by Public Act 78—939 and that defendants' sentences should stand. This act is not applicable to the instant case. (See *People v. DuPree*, 16 Ill. App.3d 769, 306 N.E.2d 693.) In *People v. Braddock*, 17 Ill.App.3d 73, 308 N.E.2d 74, we have recently decided that the provisions of Public Act 78—939 do not become effective until July 1, 1974.

In defendants' supplemental brief they request that we order their sentences to run concurrently because the record does not indicate that consecutive sentences are required to protect the public from further criminal conduct by the defendants. This contention is based on the language of section 5—8—4(b) of the Unified Code of Corrections, which provides:

> "The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court may set forth in the record." Ill. Rev. Stat., ch. 38, sec. 1005—8—4(b).

In a recent case cited by defendants, *People v. Reno*, 17 Ill.App.3d 348, 308 N.E.2d 3, the appellate court ordered a consecutive sentence to run concurrently so "that the ends of justice will best be served." After a thorough review of the record in the instant case, which included the hearing in aggravation and mitigation, we conclude that consecutive sentences are proper under the circumstances and although the trial court did not specifically state in the record that consecutive sentences were in the public interest, it is apparent that he was of such an opinion and the circumstances of the case fully justify his order. See *People v. Talach*, 19 Ill.App.3d 189, 311 N.E.2d 319, where the court remanded for further consideration of the propriety of consecutive sentences, when, after examining the record, it could not make a proper determination, and was remanding for additional consideration of other sentencing issues.

Finally, defendants contend that their sentences should be further reduced because they were excessive considering their personal backgrounds. The modified sentences are within the bounds prescribed by the legislature. The record does not warrant any further reduction. Accordingly, the judgments of the circuit court of Cook County are affirmed except that the sentences are modified as expressed above.

Judgments affirmed as modified.

DEMPSEY and MEJDA, JJ., concur.